UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| JAMES MCCOY, | : | |
| | : | |
| Petitioner, | : | **REPORT AND** |
| | : | **RECOMMENDATION** |
| - against - | : | |
| | : | **02 Civ. 7066 (KMK) (RLE)** |
| WILLIAM PHILLIPS, Superintendent, | : | |
| Green Haven Correctional Facility, | : | |
| | : | |
| Respondent. | : | |

**To the HONORABLE KENNETH M. KARAS, U.S.D.J.:**

## I. INTRODUCTION

*Pro se* petitioner, James McCoy ("McCoy"), seeks a writ of habeas corpus pursuant to 28

U.S.C. § 2254 challenging his May 21, 1996 conviction in New York State Supreme Court,

Rockland County.  McCoy was convicted of four counts of murder in the second degree; robbery

in the first degree; burglary in the first degree; two counts of attempted sexual abuse in the first

degree; and grand larceny in the fourth degree.  He was sentenced to concurrent indeterminate

prison terms of from twenty-five years to life on the murder charges, to run concurrent to an

indeterminate prison term of from twelve and one-half years on the robbery charge. Those

concurrent sentences were imposed to run consecutively to an indeterminate prison term of from

twelve and one-half to twenty-five years on the burglary charge, from two to four years on the

grand larceny charge, and concurrent indeterminate terms of from two to four years on the

attempted sexual abuse counts, each to run consecutively to the murder and robbery charges.

McCoy is currently incarcerated at Shawangunk Correctional Facility in Wallkill, New York.

McCoy contends that his conviction violates his right to 1) be free from unlawful seizures

under the Fourth Amendment; 2) be free from unlawful searches under the Fourth Amendment;

3) have scientifically reliable evidence under **Frye v. United States**, 293 F. 1013 (1923); 4) have

legally sufficient evidence establish his guilt beyond a reasonable doubt for the attempted sexual

abuse charges; 5) have legally sufficient evidence establish his guilt beyond a reasonable doubt

for all convictions; 6) a fair trial; 7) disclosure of exculpatory materials under **Brady v.**

**Maryland**, 373 U.S. 83 (1967); and 8) disclosure of the prosecutor's evidence under the

Fourteenth Amendment. Amended Petition ("Pet.") at ¶ 13.  For the reasons which follow, I

recommend that the petition be **DENIED**.

## II. BACKGROUND

**A.     Factual Background**[1]

In April 1995, McCoy lived with his girlfriend, Dorothy Sanders ("Sanders"), at 6 Park

Avenue, Spring Valley, New York, in the upstairs apartment of a two-family house.  Marie Edith

Pierre-Toussaint ("Toussaint") lived alone in the downstairs apartment at 6 Park Avenue.  She

normally worked as a nurse from 3:00 p.m. to 11:00 p.m., but did not go to work on April 12,

1995.  After shopping for groceries, Toussaint returned home and found McCoy burglarizing her

apartment at approximately 9:00 p.m.  He attacked her with a knife, stabbed her face and chest,

slashed her throat, and sexually assaulted her.  Toussaint died as a result of the injuries she

sustained during the attack.  McCoy, who cut his thumb during the attack, left a trail of blood

from Toussaint's apartment to his upstairs apartment.

After the attack, McCoy tried to sell Toussaint's television to Troy Campbell.  Campbell

---

[1]The Factual Background is taken from Respondent's Opposing Declaration ¶¶ 5-10, and Memorandum of Law in Opposition to Petition for a Writ of Habeas Corpus at 33-34.

declined to buy the television after noticing McCoy's bloodstained shirt, and McCoy went to

Jean Cadet's house.  McCoy told Cadet that he was in trouble, and asked for help.  Cadet drove

McCoy home, but McCoy told Cadet not to drop him off because police were in front of his

house.

As part of the investigation, the police interviewed Sanders, who told police that she

rented a hotel room for McCoy, and provided the police with keys to the room.  The police

arrested McCoy in the hotel room.  After the arrest, the police found Toussaint's house and car

keys in McCoy's jacket.  Sanders found bloodstained sneakers and socks in the upstairs

apartment.

A state medical examiner concluded that Toussaint died from loss of blood, and that her

vagina and anus had been penetrated by either a penis or a foreign object.  Analysis of DNA

evidence identified Toussaint's, McCoy's, and mixed samples of blood in Toussaint's apartment,

the trail of blood from the downstairs to the upstairs apartment, and in Toussaint's automobile.

McCoy questions the validity of the DNA evidence.  As he argued in his **Frye** hearing, McCoy

maintains that the State's failure to perform a complete polymerase chain reaction ("PCR")

analysis rendered the State's DNA evidence scientifically unreliable at trial.  More specifically,

he claims that the failure to employ the "product gel" test from its PCR protocol made the test

unreliable.  The "product gel" test is a recommended step in the DNA analysis, which is used to

confirm that a piece of DNA has been copied.  **Frye** Hearing Transcript ("**Frye** Hr'g.") at 103-

05.

### B.    Procedural Background

McCoy was charged with four counts of murder in the second degree under New York

Penal Law ("N.Y.P.L.") § 125.25; robbery in the first degree, N.Y.P.L. § 160.15; burglary in the

first degree, N.Y.P.L. § 140.30; two counts of attempted sexual abuse in the first degree,

N.Y.P.L. §§ 110.00, 130.65; and grand larceny in the fourth degree, N.Y.P.L § 155.30.  He pled

not guilty to all charges.  The trial court held a suppression hearing, and on February 16, 1996,

granted McCoy's motion to suppress (1) evidence recovered by the police from his apartment

and (2) his statement to police, but denied the motion to suppress evidence seized by the police

when he was arrested in the hotel room.  On or about January 25 and 29, 1996, the court held a

**Frye** hearing on McCoy's motion to preclude the admission of DNA evidence, and denied this

motion on March 22, 1996.  **Frye**, 293 F. 1013.  McCoy's jury trial commenced on March 13,

1996, and on April 19, 1996, he was convicted as charged.  He was sentenced on May 21, 1996.

McCoy claims he was denied his due process rights under the Fifth and Fourteenth

Amendments because the prosecutor's comments during the summation at trial and the

prosecutor's failure to disclose exculpatory material denied him the right to a fair trial.

Specifically, McCoy claims that the prosecutor commented on four improper areas during his

summation: 1) that there was no evidence that would indicate that McCoy found the set of keys

that he was carrying at the time of his arrest; 2) that McCoy did not have an alibi for a specific

time; 3) that a dog tied near the rear of the house would not have barked at McCoy because he

was the dog's owner; and 4) that there was no evidence of a fight that McCoy had stated he had

been involved in.

McCoy appealed his conviction to the New York Supreme Court, Appellate Division,

Second Department, claiming that: 1) evidence obtained from the search of his apartment and

hotel room was admitted in error at trial; 2) his arrest violated **Payton v. New York**, 445 U.S.

573 (1980), because police obtained consent to enter his apartment from an unauthorized third party; 3) DNA evidence was admitted in error at trial; 4) the State's evidence was insufficient to convict him of attempted sexual abuse; 5) the evidence failed to prove his guilt as a matter of law; and 6) the prosecutor's statements during summation denied his right to a fair trial.  The Appellate Division affirmed his conviction on April 17, 2000, finding that his warrantless arrest was based on probable cause and justified by exigent circumstances; evidence recovered during a search at the police station following his arrest was admissible; the evidence was legally sufficient to establish his guilt beyond a reasonable doubt; the verdict was not against the weight of the evidence; and his remaining claims were unpreserved or without merit.  *See* **People v. McCoy**, 707 N.Y.S.2d 337 (App. Div. 2000).  Leave to appeal to the New York State Court of Appeals was denied on June 20, 2000.  **People v. McCoy**, 713 N.Y.2d 143 (2000).  McCoy did not file a petition for writ of certiorari to the United States Supreme Court.

On August 15, 2001, McCoy filed a motion to vacate his conviction under New York Criminal Procedure Law ("N.Y.C.P.L.") § 440.10, arguing that he received ineffective assistance of counsel.  On November 28, 2001, the trial court denied this motion on the grounds that the allegations of ineffective assistance of counsel all related to matters that were part of the record, which McCoy could have raised on appeal.  His application for leave to appeal to the Appellate Division was denied on March 27, 2002.

McCoy filed his initial petition for a writ of habeas corpus on December 24, 2001, which was marked as filed on September 6, 2002.  On December 17, 2002, respondent filed a motion to

dismiss the habeas petition because it contained at least one unexhausted claim[2].  On December

30, 2002, the Honorable Kimba M. Wood stayed McCoy's habeas petition to allow him to

exhaust his claims.  Pacer Doc # 10.

McCoy filed a second § 440.10  motion to vacate on November 14, 2002.  He raised

allegations of prosecutorial misconduct, specifically that the State failed to disclose exculpatory

evidence under **Brady v. Maryland**, 373 U.S. 83 (1967), and the Fourteenth Amendment.

McCoy alleged that the prosecutor violated his **Brady** obligations by not correcting the false

statement of Troy Campbell, a key government witness.  Campbell had testified that no promises

were made to him by the government for his cooperation, when, in fact , he was receiving

"consideration" from New Jersey prosecutors in exchange for his favorable testimony.  McCoy

further alleged that the prosecution failed to disclose impeachment evidence affecting the

credibility of Campbell, specifically that Campbell had failed to appear at his own trial.  On

March 4, 2003, the lower court denied McCoy's motion on procedural grounds and on the merits.

On June 5, 2003, the Appellate Division denied McCoy's application for leave to appeal the

denial of his motion.

On August 22, 2003, McCoy filed an amended petition for a writ of habeas corpus.  On

August 9, 2004, he filed an application for leave to file a writ of coram nobis in state court

concerning an alleged ineffective assistance of counsel claim.  Since the Court had previously

stayed McCoy's habeas petition to provide him with an opportunity to exhaust his claims, and

because he failed to show good cause why he had not raised the ineffective assistance of counsel

---

[2] The unexhausted claim was pending before the state court in a N.Y.C.P.L § 440.10 motion filed on
November 14, 2002.

claims when he filed the § 440.10 motion, this application was denied.  Pacer Doc # 32.

### III. DISCUSSION

**A.      Threshold Issues**

      **1.          Timeliness**

A petitioner must file an application for a writ of habeas corpus within one year of his

conviction becoming final.  ***See*** 28 U.S.C. § 2244(d)(1).  A conviction becomes final when the

time to seek direct review in the United States Supreme Court by writ of certiorari expires, that

is, ninety days after the final determination by the state court.  **Williams v. Artuz**, 237 F.3d 147,

151 (2d Cir. 2001) (***quoting*** **Ross v. Artuz**, 150 F.3d 97, 98 (2d Cir. 1998).

McCoy's conviction became final on September 18, 2000, ninety days after his

application for leave to appeal to the New York State Court of Appeals was denied.  **People v.**

**McCoy**, 713 N.Y.2d 143 (2000).  To be timely, McCoy would have had to file within one year:

on or before September 18, 2001.  However, McCoy filed a motion to vacate under § 440.10 on

August 15, 2001, which was subsequently denied on procedural grounds on November 28, 2001.

On March 27, 2002, the Appellate Division denied his application seeking leave to appeal the

denial of his motion.  The statute of limitations was statutorily tolled while this motion was

pending from August 15, 2001 to March 27, 2002.  ***See*** 28 U.S.C. §2244 (d) (2);  **Pratt v.**

**Greiner**, 306 F. 3d 1190 (2d Cir. 2002) (motion to vacate a conviction is state post-conviction

relief).   McCoy filed his initial habeas petition on December 24, 2001.   The Court stayed the

petition on December 31, 2002.  The Court expressly conditioned the stay on McCoy's returning

to federal court within thirty days after state court exhaustion.  The state court denied McCoy's

previously unexhausted  § 440.10 motion on June 5, 2003.  From November 14, 2002 to June 5,

2003, while his second motion to vacate was pending, the tolling provision applied to his habeas petition. On August 22, 20003, McCoy filed his amended habeas petition, which, while not within the allotted time period set forth by this Court, would be timely if the tolled days were excluded. However, for the reasons set forth below, I recommend it be **DENIED** on the following grounds.

### 2.      Exhaustion

Pursuant to 28 U.S.C. § 2254(b), as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), the Court may not consider a petition for habeas corpus unless the petitioner has exhausted all state judicial remedies. 28 U.S.C. § 2254(b)(1)(A); **Picard v. Connor**, 404 U.S. 270, 275 (1971); **Dorsey v. Kelly**, 112 F.3d 50, 52 (2d Cir. 1997). In order to satisfy substantive exhaustion, a petitioner's claim before the state courts must have been federal or constitutional in nature. Although not an exacting standard, a petitioner must inform the state courts of "both the factual and the legal premises of the claim [he] asserts in federal court." **Jones v. Vacco**, 126 F.3d 408, 413 (2d Cir. 1997) (*quoting* **Daye v. Attorney Gen.**, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*)).

Procedurally, the petitioner must utilize all avenues of appellate review within the state court system before proceeding to federal court. *See* **Bossett v. Walker**, 41 F.3d 825, 828 (2d Cir. 1994). He must raise a federal claim at each level of the state court system, "present[ing] the substance of his federal claims 'to the highest court of the pertinent state.'" **Id**. (*quoting* **Pesina v. Johnson**, 913 F.2d 53, 54 (2d Cir. 1990).

### a. McCoy's Sufficiency of Evidence of Sexual Abuse Claim is Substantively Exhausted

With respect to substantive exhaustion, respondent argues that McCoy's fourth claim concerning the legal sufficiency of the evidence to establish his guilt beyond a reasonable doubt for attempted sexual abuse is unexhausted because it was never presented to the state court in federal constitutional terms.  The Court disagrees.  McCoy's memorandum of law to the Appellate Division, Second Department, cites **People v. Contes**, 60 N.Y.2d 620 (1983).  The ruling in **Contes** relies on the federal constitutional standard for sufficiency of the evidence set forth in **Jackson v. Virginia**, 443 U.S. 309, 318-19 (1979).  This presented to the state court "essentially the same legal doctrine he asserts in his federal petition."  **Daye**, 696 F.2d at 192.

### b. McCoy's Sufficiency of the Evidence of Sexual Abuse Claim is Procedurally Exhausted

Respondent also argues that the fourth claim regarding the sufficiency of the evidence supporting the sexual abuse claim is not procedurally exhausted because McCoy never identified a constitutional claim in his direct appeal.  Furthermore, respondent argues that McCoy failed to indicate the constitutional basis for his claim in his leave application to the Court of Appeals and did not establish that the claim was reviewable and preserved.  The Court disagrees.  McCoy properly raised his claims in both his direct appeal to the Appellate Division by citing **Contes**, as well as in his application for leave to appeal to the Court of Appeals, where he questioned whether his guilt to lesser included offenses was proven beyond a reasonable doubt.  His claims are therefore exhausted and reviewable by this Court.

### 3.        Procedural Default

A petitioner is procedurally barred from habeas review if 1) the state court declined to

9

address his federal claim because he failed to meet a state procedural requirement, and 2) the

state court decision rested on an independent and adequate state ground.  *See* **Coleman v.**

**Thompson**, 501 U.S. 722, 750 (1991); **Jones**, 126 F.3d at 414; **Pearson v. Greiner**, 2004 WL

2453929, at *8 (S.D.N.Y. Nov. 3, 2004).  A state-law ground is 'adequate' if "the state's

insistence on compliance with its procedural rule serves a legitimate state interest."  **Wainwright**

**v. Sykes**, 433 U.S. 72, 83 n.8 (1977) (*quoting* **Henry v. Mississippi**, 379 U.S. 443, 447 (1965)).

Federal habeas review is precluded if McCoy failed to properly raise objections or failed to

appeal to the state courts, unless he can "demonstrate cause for the default and actual prejudice

. . . or demonstrate that failure to consider the claims will result in a fundamental miscarriage of

justice."  **Coleman**, 501 U.S. at 750; *see* **Harris v. Reed**, 489 U.S. 255, 258 (1989).  Review is

foreclosed "even where the state court has also ruled in the alternative on the merits of the federal

claim."  **Velasquez v. Leonardo**, 898 F.2d 7, 9 (2d Cir. 1990).  The Supreme Court has defined

"cause" as a showing that "some objective factor external to the defense impeded counsel's

efforts to raise the claim in state court."  **McCleskey v. Zant**, 499 U.S. 467, 493 (1991) (*citing*

**Murray v. Carrier**, 477 U.S. 478, 488 (1986)). "Prejudice exists if 'there is a reasonable

probability that the result of the trial would have been different absent the alleged constitutional

violation."  **Brown v. Senkowski**, 2004 WL 2979792, at *15 (S.D.N.Y. Dec. 14, 2004) (*quoting*

**Stickler v. Greene**, 527 U.S. 263, 289 (1999)).  Finally, the "fundamental miscarriage of justice"

exception "is only available where the petitioner can supplement his constitutional violation with

a 'colorable showing of factual innocence'" in the form of newly adduced evidence of innocence.

**Washington v. Superintendent, Otisville Corr. Facilities**, 1997 WL 178616, at *7 (S.D.N.Y.

Apr. 11, 1997) (*quoting* **McCleskey**, 499 U.S. at 494).  A court "may not assume that a state

court rested its decision on a procedural default without an explicit statement to that effect."
**Jones**, 126 F.3d at 415.

Respondent argues that McCoy's failure to exhaust his fourth claim is a procedural default because he has no other procedural channels available to him in the state court. However, as stated above, McCoy's fourth claim was properly exhausted and there are no other procedural bars to preclude this claim from review. Therefore, this Court will address McCoy's claims on the merits.

**4.        McCoy's Fourth Amendment Claims are Procedurally Barred**

McCoy alleges that police officers violated his Fourth Amendment right to be free from unlawful search and seizures when they searched his apartment and hotel room without his consent, and seized a video cassette sleeve and pictures of his apartment. McCoy is procedurally barred from raising these claims. "[W]here the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at his trial." **Stone v. Powell**, 428 U.S. 465, 494 (1976). This Court can only review McCoy's claims "(a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." **Capellan v. Riley**, 975 F.2d 67, 70 (2d Cir. 1992). Procedures to address Fourth Amendment violations in New York are codified in New York State Criminal Procedure Law §§ 710 et seq, (McKinney 1995 & Supp.1999-2000), and meet part (a) of the **Capellan** test. *See* **Gates v. Henderson**, 568 F.2d 830, 837 (2d Cir. 1977); *see*

*also* <u>Crispino v. Allard</u>, 378 F. Supp. 2d 393, 413 (S.D.N.Y. 2005).

McCoy was provided with a full and fair opportunity to litigate both of his Fourth Amendment claims.  The trial court conducted a suppression hearing where seven witnesses were examined, and issued an opinion denying McCoy's Fourth Amendment claims.  The trial court's decision was affirmed by the state appellate courts.  The state courts conducted "a reasoned method of inquiry into relevant questions of fact and law" of his claim.  <u>Capellan</u>, 975 F.2d at 71 (quotation marks omitted).  Accordingly, I recommend that McCoy's Fourth Amendment claims be **DISMISSED**.

## B.  Merits of the Claims

### 1.       Standard of Review

AEDPA constrains a federal habeas court's ability to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  The Act limits issuance of the writ to circumstances in which the state adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); *see* <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000).  A state court decision is contrary to federal law if the state court applies "a conclusion opposite to that reached by [the Supreme] Court on a question of law or if [it] decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  <u>Williams</u>, 529 U.S. at 413.  Furthermore, in cases where the state court decision rests on a factual determination, the federal court must find that the "decision . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).

### 2.    Admission of Scientific Evidence at Trial Was Not Unreasonable

McCoy claims that the DNA evidence admitted at trial was scientifically unreliable

because the State failed to perform a PCR analysis.  New York State uses the test articulated in

**Frye v. United States**, 293 F. 1013 (1923), to determine if scientific evidence is admissible at

trial.  Under **Frye**, a scientific procedure "must be sufficiently established to have gained general

acceptance in the particular field in which it belongs." **Frye**, 293 F. at 1013.  Here, the trial court

found that the PCR analysis procedure met the **Frye** standard because the "product gel" step is

only recommended, and is not a mandatory step.  **Frye** Hr'g. at 103-04.  This Court finds that the

trial court determination of fact was not unreasonable based on the evidence presented.

Therefore, I recommend that McCoy's claim that DNA was erroneously admitted at trial be

**DISMISSED**.

### 3.    State Court's Adjudication of Legal Sufficiency of the Evidence Claims Was Not Contrary to Federal Law

McCoy maintains that the State failed to present legally sufficient evidence to establish his

guilt beyond a reasonable doubt for the attempted sexual abuse charge, and for his other

convictions.  The Court is required to consider the trial evidence in the light most favorable to the

prosecution and uphold the conviction if "*any* rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt." **Jackson v. Virginia**, 443 U.S. 307, 319

(1979) (emphasis in original); **Einaugler v. Supreme Court of the State of New York**, 109 F.3d

836, 840 (2d Cir. 1997).  Under New York State law, to establish McCoy's guilt for attempted

sexual abuse in the first degree, the prosecution was required to prove that, with intent to commit

sexual abuse in the first degree, McCoy engaged in conduct which tends to effect the commission

of sexual abuse. N.Y.P.L. § 110.00.  Sexual abuse in the first degree is defined as subjecting

another person to sexual contact by (1) forcible compulsion; or (2) when the other person is

incapable of giving consent by reason of being physically helpless; or (3) when the other person is

less than eleven years old.  N.Y.P.L § 130.65.  A reasonable trier of fact could have found beyond

a reasonable doubt that McCoy intended to have forcible sexual contact with Touissant by

evidence of abrasions and tears in the victim's vagina and anus.  Trial Tr. at 1429-30.

McCoy also claims that generally, the evidence of his guilt was insufficient as a matter of

law.  He argues that without the DNA evidence, the remaining evidence is insufficient to prove

guilt beyond a reasonable doubt.   As stated above, this Court finds that the trial court made a

reasonable determination of the admissibility of the DNA evidence.  Furthermore, the Appellate

Division reached the merits of McCoy's insufficiency of the evidence claims in his state appeal

and found that the evidence was legally sufficient to affirm his conviction.  **People v. McCoy**, 707

N.Y.S.2d 337 (App. Div. 2000).  This Court finds that the state court's adjudication of his claims

was not an unreasonable application of federal law, and therefore,  I recommend that these claims

be **DISMISSED**.

### 4.      McCoy was Not Deprived of his Right to a Fair Trial

McCoy claims that the prosecutor's summation deprived him of his right to a fair trial.  He

argues that the prosecutor made comments, which shifted the burden of proof to the defendant and

made reference to evidence that was not in the record. It "'is not enough that the prosecutors'

remarks were undesirable or even universally condemned.' . . . The relevant question is whether

the prosecutors' comments 'so infected the trial with unfairness as to make the resulting

conviction a denial of due process.'" **Darden v. Wainwright**, 477 U.S. 168, 181 (1986) (*quoting*

**Darden v. Wainwright**, 699 F.2d 1031, 1036 (11th Cir. 1983), and **Donnelly v. DeChristoforo**,

416 U.S. 637 (1974)).  McCoy has not met this standard.  This is not a case in which a prosecutor

utilized incorrect statements of law, injected her personal beliefs, and made personal attacks, with

no curative instructions whatsoever.  *See, e.g.,* **Floyd v. Meachum**, 907 F.2d 347, 354-56 (2d Cir.

1990).  Rather, it is a case where the prosecutor responded to the defense counsel's summation

and asked the jury to draw reasonable inferences.

Respondent claims that each of the comments identified by McCoy were properly

responsive to arguments his own attorney presented in his summation.  In the first challenged

comment, the prosecutor offered that McCoy's argument simply invited the jury to speculate upon

the evidence.  With respect to the comment that McCoy did not have an alibi, the trial judge

struck the prosecutor's comments and reminded the jury in its charge that McCoy was not

required to prove or disprove anything.  As for the third comment, the prosecutor suggested that

the dog tethered outside of the basement window would have prevented anyone but McCoy from

breaking into the house.  Respondent argues that this comment was simply advancing reasonable

inferences from the evidence because McCoy owned the dog and each police witness noted the

dog's barking and hostility when they went to the back of Toussaint's house.  Finally, respondent

counters that the prosecutor's argument that there was no evidence of a fight did not shift the

burden of proof, but was a proper comment on the evidence because McCoy's attorney cross-

examined the particular witness about McCoy's explanation for the blood.

None of the challenged comments rendered the trial fundamentally unfair so as to

deprive McCoy of his right to due process.  Because McCoy has not demonstrated that the

prosecutor's remarks rose to the level of a denial of due process, I recommend that this claim be

**DISMISSED**.

### 5.        The Prosecution Did Not Suppress Exculpatory Evidence

The prosecution may not suppress evidence favorable to an accused "where the evidence is

material either to guilt or to punishment, irrespective of the good or bad faith of the prosecution."

**Brady**, 373 U.S. at 87.  Suppression of such evidence violates due process and may render the

trial inequitable.  **Id**.  The government has an affirmative duty to disclose exculpatory material or

impeachment evidence, whether or not it is requested by the defense.  **United States v. Jackson**,

345 F.3d 59, 68-69 (2d Cir. 2003).  The evidence at issue must be favorable to the accused, either

because it is exculpatory or impeaching; the evidence must have been suppressed by the State,

either willfully or inadvertently; and prejudice must have ensued.  **Strickler v. Greene**, 527 U.S.

263, 281-82 (1999); **United States v. Coppa**, 267 F.3d 132, 140 (2d Cir. 2001).  Ultimately, the

court must find that the evidence is material.  **Giglio v. United States**, 405 U.S. 150, 154 (1972).

Evidence is considered "material" if there is a reasonable probability that, had the evidence been

disclosed, the result of the court proceeding would have been different.  *See* **Kyles v. Whitley**,

514 U.S. 419, 434 (1995).

McCoy argues that the prosecution failed to disclose favorable evidence in its possession

that was material to the question of his guilt, and impeachment evidence regarding a key

government witness.  Although the prosecution failed to correct Campbell when he testified that

he was receiving no consideration for his testimony, this does not rise to the level of a **Brady**

violation because all agreements between Troy Campbell and the Rockland County District

Attorney's Office were disclosed at trial.  Trial Tr. at 2036-40. There can be no **Brady** violation

unless the prosecution actually suppressed the evidence at issue.  Evidence is not suppressed for

**Brady** purposes if the petitioner was informed of the evidence.  **United States v. Esposito**, 834

F.2d 272, 275 (2d Cir. 1987).

Similarly, information concerning Campbell's "failure to appear" did not constitute Brady

material.  McCoy alleged that Campbell failed to appear at his own trial. Respondent asserts that

Campbell's failure to appear was not for his own "trial," but was for sentencing on his previously

entered guilty plea to a traffic violation, and that the prosecution was not obligated to disclose

such evidence.  While significant impeachment evidence invokes **Brady** obligations, "evidence is

material only if there is a reasonable probability that, had the evidence been disclosed to the

defense, the result of the proceeding would have been different."  **United States v. Bagley**, 473

U.S. 667, 676-82 (1985).  Evidence of Campbell's failure to appear for sentencing on a traffic

violation is not significant impeachment evidence.  Even if this evidence qualifies as significant

impeachment evidence, McCoy has not demonstrated a reasonable probability that a jury would

have returned a different verdict had this evidence been disclosed.  Therefore, I recommend that

McCoy's **Brady** claims be dismissed.

### IV. CONCLUSION

For the foregoing reasons, I recommend that McCoy's petition for a writ of habeas corpus

be **DENIED**.  Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have ten

(10) days after being served with a copy of the recommended disposition to file written objections

to this Report and Recommendation.  Such objections shall be filed with the Clerk of the Court

and served on all adversaries, with extra copies delivered to the chambers of the Honorable

Kenneth M. Karas, 500 Pearl Street, Room 920, and to the chambers of the undersigned, Room

1970. Failure to file timely objections shall constitute a waiver of those objections both in the

District Court and on later appeal to the United States Court of Appeals. *See* **Thomas v. Arn**,

474 U.S. 140, 150 (1985); **Small v. Secretary of Health and Human Services**, 892 F.2d 15, 16

(2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1) (West Supp. 1995); Fed. R. Civ. P. 72, 6(a),

6(e).

**DATED: October 25th, 2006**
**New York, New York**

**Respectfully Submitted,**

The Honorable Ronald L. Ellis
United States Magistrate Judge

**Copies of this Report and Recommendation were sent to:**

James McCoy
96-A-3717
P.O. Box 750
Shawangunk Correctional Facility
Wallkill, NY 12589

Ann C. Sullivan, Esq.
Senior Assistant District Attorney
Rockland County
County Office Building
1 South Main Street, Suite 500
New City, New York 10956

18